# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

KAREN BATES,

      Plaintiff,

vs.                                                                                     No. CIV 08-1013 JB/RLP

NEW MEXICO CORRECTIONS DEPARTMENT,
ED GONZALES, in his individual and official capacity
as the NMCD Range Master and the Interstate Compact
Manager, MICHAEL BOUSKA, in his individual and
Official capacity as the NMCD Assistant Range Master
and the Security Threat and Intelligence Unit Manager,
and CHARLENE KNIPFING, in her individual and
official capacity as the Probation and Parole Division
Director, DAN BARELA, in his individual and official
capacity as Probation and Parole Division Defensive
Tactics Course Instructor, and JOE BARELA, in his
individual and official capacity as a Probation and Parole
Defensive Tactics Instructor, Supervisor, and/or employees,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Partial Dismissal

of First Amended Complaint, filed February 24, 2010 (Doc. 63).  The Court held a hearing on

August 23, 2010.  The primary issues are: (i) whether Plaintiff Karen Bates exhausted her

administrative remedies for her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e to 2000e-17 and the New Mexico Human Rights Act, NMSA 1978, §§ 28-1-1 to 28-1-15,

as amended ("NMHRA"); and (ii) whether punitive damages are available under the NMHRA or

against the state under Title VII.  After carefully reviewing the parties' arguments and the facts of

this case, the Court finds that Bates did not exhaust her administrative remedies for the individual

Defendants or for the events that occurred at the defensive tactics training, and that the Court does

not have subject-matter jurisdiction over these claims.  The Court also finds, and Bates concedes, that punitive damages are not available under the NMHRA or against the state under Title VII. Consequently, the Court grants the Defendants' motion for partial summary judgment.

## FACTUAL BACKGROUND

Bates is a female employee of the New Mexico Corrections Department ("NMCD").  See Plaintiff Karen Bates' First Amended Complaint for Employment Discrimination ¶ 1, at 2, filed December 4, 2009 (Doc. 55)("Amended Complaint");[1] Defendants' Answer to First Amended Complaint for Employment Discrimination ¶ 1, at 1, filed December 21, 2009 (Doc. 57)("Answer"). She has worked as a Probation and Parole Officer I (PPO) for the NMCD since February of 2003. See Amended Complaint ¶ 13, at 3; Answer ¶ 13, at 3.

To become firearms certified, PPOs must attend a forty-hour defensive training course and a forty-hour firearms course.  See Amended Complaint ¶ 14, at 3; Answer ¶ 14, at 3.  Bates alleges that, when a PPO becomes firearms certified, she earns an increase in benefits and opportunity for overtime and advancement within the NMDC.  See Amended Complaint ¶ 15, at 3.  Bates attended a defensive tactics course between March 27, 2006 and March 31, 2006, during which Dan Barela and Joe Barela were Bates' instructors.  See Amended Complaint ¶ 16, at 3; Answer ¶ 16, at 3. Bates was the only female enrolled in the defensive tactics course.  See Amended Complaint ¶ 17, at 3; Answer ¶ 17, at 3.

Bates alleges that, throughout the defensive tactics course, D. Barela and J. Barela, the "instructors/supervisors" of this class, "sexually harassed, humiliated, treated with disdain based on

---

[1] Bates filed the Amended Complaint on March 25, 2009 without leave to amend.  The Court granted Bates leave to amend in its Memorandum Opinion and Order, filed November 30, 2009 (Doc. 53).  Bates then refiled the Amended Complaint on December 4, 2009.

her gender, beat[], disgraced, and ridiculed" her.  Amended Complaint ¶ 18, at 3.  Bates alleges that, during one of the exercises during the defensive tactics course, two other trainees beat her with rubberized/foam padded batons.  See id. ¶ 20, at 4.  Bates alleges that during the skirmish someone pulled her sweat pants down in front of the remaining trainees and instructors, exposing her underwear.  See id.  Bates contends that, "to her terror," J. Barela and D. Barela continued to yell at her, and to demand the male trainees to continue to hit and wrestle her, despite her sweat pants being down to mid-thigh, leaving only her underwear covering her.  Id.  This event allegedly lasted approximately two to three minutes.  See id.  Bates contends that she heard snickering by onlookers during this event, and at no time did anyone ask her if she was alright or if she required medical attention or treatment.  See id.

Bates also alleges that, on another occasion during the defensive tactics course, when practicing take downs, D. Barela and J. Barela paired Bates up with a male exceeding her weight by approximately one-hundred pounds.  See id. ¶ 21, at 4.  The instructors yelled at the male trainee, demanding that he throw Bates down as hard as he could, knocking the wind out of her.  See id.

Bates further alleges that, during the same defensive tactics course, J. Barela and D. Barela paired Bates with the same male trainee who outweighed her by approximately one-hundred pounds, with an intent to humiliate her and injure her emotionally and physically.  See id. ¶ 23, at 4. During this training, Bates "was to lie on her back with her legs spread and the male trainee was on top of her, pinning her down by her arms, chest to chest."  Id.  Bates was instructed to struggle and break away from the male trainee, but could not.  See id.  J. Barela and D. Barela yelled at the male trainee to continue his hold on Bates and to keep her pinned to the ground.  See id.

Bates alleges that, during the entire period of the defensive tactics course, she was "put

down, harassed, beaten, injured, and humiliated, all due to her gender." Id. ¶ 24, at 5.  Bates alleges

that she "suffered bruises, contusions, and a stomach hernia that affected her sleeping ability,

emotional stability, and confidence to succeed in firearm certification."  Id.

Bates attended a firearms training course the first week of April 2006, the week following

the defensive tactics course.  See Exhibit to Plaintiff's Response in Opposition to Defendants'

Motion for Partial Dismissal of First Amended Complaint, Affidavit of Karen Bates ¶ 6, at 2, filed

April 29, 2010 (Doc. 73-1).  During the firearms training course, Defendant Ed Gonzales was the

NMCD Range Master and the Interstate Compact Manager, and Defendant Michael Bouska was the

NMCD Assistant Range Master and the Security Threat and Intelligence Unit ("STIU") Manager.

See Amended Complaint ¶¶ 3-4, at 2; Answer ¶¶ 3-4, at 2.

Bates alleges that, during the firearms training course, she complained to Gonzales and

Bouska that her issued equipment was inadequate and/or incorrect, and that the deficiencies would

negatively impact her ability to perform as required during the training course.  See Amended

Complaint ¶ 26, at 5.  She further alleges that they ignored her complaints, so she replaced some of

the equipment at her own expense, but she nevertheless failed to pass the course.  See id. ¶ 27, at 5.

Defendant Charlene Knipfing, the Probation and Parole Division ("PPD") Director at all

times relevant to this matter, approved some individuals who failed the firearms training course to

repeat the course.  See Amended Complaint ¶¶ 5, 28, at 2, 5; Answer ¶¶ 5, 28, at 2, 5.  Bates alleges

that all the selected individuals were male and that she was not selected.  See Amended Complaint

¶ 29, at 5.

Bates alleges that, on or about April 23, 2007, while she was seeking a promotion, NMCD

Human Resources Supervisor Roberta A. Lujan told her that an otherwise qualified applicant for a

Probation and Parole Fugitive Apprehension Officer II ("FAO") must obtain firearm certification within twelve months of appointment to an FAO position. See id. ¶ 30, at 5. On or about April 25, 2007, Bates responded to a vacancy for an FAO position in the NMCD STIU that had been posted on April 23, 2007. See Amended Complaint ¶ 31, at 6; Answer ¶ 31, at 5.

In June 2007, Bates and numerous other applicants who had failed the 2006 firearms training course repeated the course; Bates contends she repeated the course to comply with the firearm certification requirement and be eligible for promotions. See Amended Complaint ¶ 31, at 6; Answer ¶ 31, at 5. Bates alleges the Bouska was only intermittently present for the June 2007 training, and Gonzales was "openly hostile and verbally abusive" to Bates, telling her "repeatedly that she was going to fail the June 2007 course." Amended Complaint ¶¶ 33-34, at 6.

Bates and all the other attendees of the June 2007 training failed some portion of the course. See Amended Complaint ¶ 35, at 6; Answer ¶ 35, at 6. They were all given the option of participating in a condensed, remedial training, which was delayed until October 2007, despite, Bates alleges, assurances that it would be "provided within a few weeks." Amended Complaint ¶ 36, at 6. See Answer ¶ 36, at 6.

Bates alleges that, at the October 2007 remedial training, Bouska initially informed her that she and the other attendees would only have to qualify on those portions they had previously failed, but Gonzales later reversed this decision and announced that the attendees would have to pass all portions of the course. See Amended Complaint ¶¶ 37-38, at 6. Bates further contends that Gonzales refused to respond substantively to her requests for instruction to correct her technique and that, during qualification shooting, Bouska failed to score at least one hit on her targets, despite Bates' pointing out his failure to do so. See Amended Complaint ¶¶ 39-40, at 6-7. Bates failed the

October 2007 remedial course, because, she alleges, Bouska and Gonzales failed to properly score, instruct, and train her.  See Amended Complaint ¶ 41, at 7.

On October 26, 2007, Bates filed a Step I grievance through American Federation of State, County and Municipal Employees, State of New Mexico Employees Local 1211 Representative Rocky E. Gutierrez, alleging a violation of the Collective Bargaining Agreement Article 6, Section 2, titled Non-Discrimination and Compliance with Laws.  See Exhibit to Response, Grievance on Behalf of Karen Bates et al. PPD-PPO at 4-8 (dated October 26, 2007), filed April 29, 2010 (Doc. 73-1).  Gutierrez then filed a Step II grievance with the NMCD on November 26, 2007.  See Exhibit to Response, Amended Grievance on Behalf of Karen Bates PPD-PPO at 11 (dated Mar 17, 2008), filed April 29, 2010 (Doc. 73-1).  In response to the Step II grievance, on December 5, 2007, Bates and the NMCD reached an agreement that provided, among other things, that Bates would receive twenty-four-hours of range training before being required to pass standardized day and night qualification rounds.  See Exhibit to Response, NMCD's Response to Grievance -- Step II at 10 (dated December 5, 2007), filed April 29, 2010 (Doc. 73-1).

Bates alleges that, on January 28, 2008, "Defendants failed to provide adequate lighting for the night qualification round as is required under Section 10.29.9.14 NMAC, which ultimately resulted in a loss of points for the Plaintiff."  Amended Complaint ¶ 44, at 7.

## PROCEDURAL BACKGROUND

On November 5, 2007, Bates filed a Charge of Discrimination alleging discrimination pertaining to the firearms training courses and denial of a promotion allegedly arising out of her failure to attain firearms qualification.  See Exhibit to Memorandum of Law in Support of Defendants' Motion for Partial Dismissal of First Amended Complaint, Charge of Discrimination

(dated November 5, 2007), filed February 24, 2010 (Doc. 64-1)("Charge").  She filed the Charge

with the New Mexico Department of Labor, Human Rights Division ("NMHRD"), the Charge was

presented to the Equal Employment Opportunity Commission ("EEOC") and the claim was assigned

EEOC Charge Number 543-2008-00117.  The Charge named only NMCD as a responding party,

and addressed only Bates' claims pertaining to firearms-training courses and her alleged lack of a

promotion.  Under "date(s) discrimination took place," Bates entered "earliest 05-01-2007" and

"latest 10-11-2007," and she checked the box indicating that she complained of a continuing action.

The Charge named no individual defendants, made no mention of a defensive tactics course in which

Bates participated during March 2006, and did not include any claim of sexual harassment.  Under

the Charge's section for particulars, Bates wrote:

> Statement of harm: I have been an employee of the NM Corrections Dept. since
> February 2003.  On October 11, 2007, I completed remedial arms training for missed
> courses as prescribe[d] by departmental policy.  However, before I left the fire arms
> training range, I was informed by the Range Master, he would not qualify me unless
> I took all the firing range courses at one time.  Per current policy, other male
> co-workers have only made up the missed courses and were qualified and armed.  I
> believe I am being discriminated because of my gender (female) and my age.  In
> addition, on or about May 2007, I applied for a promotion position and was denied
> because I was not fire arms qualified.  It's my belief at present no female Probation
> Parole Officers are authorized a fire arm in this department.
>
> Statement of discrimination: I believe I have been discriminated against because of
> my gender (female), in violation of Title VII of the Civil Rights Act of 1964, as
> amended.  In addition, I believe have been discriminated against because of my age
> (41), in violation of the Age Discrimination of Employment Act of 1967.
>
> The EEOC dismissed her Charge, stating:
>
> Based upon its investigation, the EEOC is unable to conclude that the information
> obtained establishes violations of the statutes.  This does not certify that the
> respondent is in compliance with the statutes.  No finding is made as to any other
> issues that might be construed as having been raised by this charge.

Exhibit to Response, Dismissal and Notice of Rights at 21 (dated June 26, 2008), filed April 29,

2010 (Doc. 73-1).

After the EEOC dismissed her Charge, Bates filed her Complaint on June 3, 2009.  See Doc. 1.  Her original Complaint alleged discrimination based on gender and age in violation of Title VII, the Fair Labor Standard Act ("FLSA") of 1938, 29 U.S.C. § 206(d), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, as amended ("ADEA"), and the NMHRA. Pursuant to the Court's Memorandum Opinion and Order, filed November 30, 2009 (Doc. 53)("MOO"), Bates filed her First Amended Complaint on December 4, 2009.  The Defendants filed their Answer to the Amended Complaint on December 21, 2009.

As the Court noted in the Memorandum Opinion and Order, Bates "contends that her EEO complaint included her claims arising from both the firearms course and the defensive tactics course."  MOO at 6.  The Court noted that Bates did not tender a copy of her EEOC Charge during the September 9, 2009 hearing.  See MOO at 6.  At the conclusion of the hearing, the Court indicated that it "would look at case law on how broadly or narrowly the Court should construct the EEOC complaint."  MOO at 6.

The Defendants move the Court, pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for a partial dismissal of the First Amended Complaint.  The Defendants filed a memorandum of law concurrently with their motion.  See Memorandum of Law in Support of Defendants' Motion for Partial Dismissal of First Amended Complaint, filed February 24, 2010 (Doc. 64)("Memorandum").  The Defendants attach a copy of the Charge to its memorandum as Exhibit A.

The Defendants argue that Bates failed to exhaust her administrative remedies against the named individual Defendants and events that occurred during the defensive tactics training course

in March of 2006.  See Memorandum at 4-6.  The Defendant also argues that punitive damages are

not available under the NMHRA or against the state under Title VII.  See Memorandum at 6-8.

Bates concedes that neither statute provides for punitive damages, but opposes the Motion with

regard to the Defendants' contention that she failed to exhaust her administrative remedies.  See

Plaintiff's Response in Opposition to Defendants' Motion for Partial Dismissal of First Amended

Complaint at 5-7, filed April 29, 2010 (Doc. 73).

### LEGAL STANDARD FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1)

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those

cases authorized and defined in the Constitution which have been entrusted to them under a

jurisdictional grant by Congress."  Henry v. Office of Thrift Supervision, 43 F.3d 507, 511

(10th Cir. 1994)(citations omitted).  A plaintiff generally bears the burden of demonstrating the

court's jurisdiction to hear his or her claims.  See Steel Co. v. Citizens for a Better Env't, 523 U.S.

83, 104 (1998)("[T]he party invoking federal jurisdiction bears the burden of establishing its

existence.").  Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to raise the

defense of the court's "lack of jurisdiction over the subject matter" by motion.  Fed. R. Civ.

P. 12(b)(1).  The United States Court of Appeals for the Tenth Circuit has held that motions to

dismiss for lack of subject-matter jurisdiction "generally take one of two forms: (1) a facial attack

on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge

to the actual facts upon which subject-matter jurisdiction is based."  Ruiz v. McDonnell, 299 F.3d

1173, 1180 (10th Cir. 2002).

> On a facial attack, a plaintiff is afforded safeguards similar to those provided in
> opposing a rule 12(b)(6) motion: the court must consider the complaint's allegations
> to be true.  See Ruiz v. McDonnell, 299 F.3d at 1180; Williamson v. Tucker, 645
> F.2d 404, 412 (5th Cir. 1981).  But when the attack is aimed at the jurisdictional facts

themselves, a district court may not presume the truthfulness of those allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 [summary-judgment] motion.

Alto Eldorado Partners v. City of Santa Fe, No. CIV 08-0175 JB/ACT, 2009 WL 1312856, at *8-9

(D.N.M. Mar.11, 2009)(Browning, J.)(citations omitted). As the United States Court of Appeals for

the Fifth Circuit has stated:

> [T]he trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)(quoting Mortenson v. First Fed. Sav.

& Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

When making a rule 12(b)(1) motion a party may go beyond the allegations in the complaint

to challenge the facts upon which jurisdiction depends, and may do so by relying on affidavits or

other evidence properly before the court. See New Mexicans for Bill Richardson v. Gonzales, 64

F.3d 1495, 1499 (10th Cir. 1995); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995). In

those instances, a court's reference to evidence outside the pleadings does not necessarily convert

the motion to a rule 56 motion for summary judgment. See Holt v. United States, 46 F.3d at 1003

(citing Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987)). Where, however, the court

determines that jurisdictional issues raised in rule 12(b)(1) motion are intertwined with the case's

merits, the court should resolve the motion under either rule 12(b)(6) or rule 56. See Franklin Sav.

Corp. v. United States, 180 F.3d 1124, 1129 (10th Cir. 1999); Tippet v. United States, 108 F.3d

1194, 1196 (10th Cir. 1997).  "When deciding whether jurisdiction is intertwined with the merits

of a particular dispute, 'the underlying issue is whether resolution of the jurisdictional question

requires resolution of an aspect of the substantive claim.'"  Davis ex rel. Davis v. United States, 343

F.3d 1282, 1296 (10th Cir. 2003)(quoting Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320,

1324 (10th Cir. 2002)).

## LAW REGARDING RULE 12(b)(6)

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which

relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the

sufficiency of the allegations within the four corners of the complaint after taking those allegations

as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(citation omitted).  The

sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6)

motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those

allegations in the light most favorable to the non-moving party, and draw all reasonable inferences

in the plaintiff's favor.  See Smith v. United States, 561 F.3d 1090, 1097 (10th Cir. 2009); Moore

v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Authority. of Kaw Tribe v. City of Ponca

City, 952 F.2d 1183, 1187 (10th Cir. 1991).  A complaint challenged by a rule 12(b)(6) motion to

dismiss does not need to set forth detailed factual allegations, but a plaintiff's burden to set forth the

grounds of his or her entitlement to relief "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly,

550 U.S. 544, 555 (2007).  See also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)(stating that a

plaintiff's complaint must set forth more than a threadbare recital "of the elements of a cause of

action, supported by mere conclusory statements").  To survive a motion to dismiss, a plaintiff's

complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995 (10th Cir. 2010).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Court. at 1940.

## LAW REGARDING EXHAUSTION OF ADMINISTRATIVE REMEDIES

Both Title VII and NMHRA claims must be administratively exhausted before being brought in federal court.  Title VII creates a work-sharing deferral system between the EEOC and the states that have their own employment discrimination legislation.  See 42 U.S.C. § 2000e-5(c), (d).  In the states that possess their own employment discrimination legislation, the EEOC must generally "defer" to state or local remedies.  EEOC v. Superior Temp. Servs., Inc., 56 F.3d 441, 447 (2d Cir. 1995)(quoting 42 U.S.C. § 2000e-5(c), (d)).  The NMHRA places New Mexico among those states that have their  own employment discrimination legislation and contact agencies.  See 29 C.F.R. § 1601.74 (2005).  In New Mexico, a complainant can, upon meeting filing requirements, proceed with his or her grievance either through the EEOC or through the NMHRD.  See Mitchell-Carr v. McLendon, 127 N.M. 282, 286-87, 980 P.2d 65, 69-70.  "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002).  Once a person elects to proceed with his or her complaint under state law, the NMHRA controls the grievance procedures for resolving the complaint.  See id.

Whether complainants decide to pursue their grievances with the EEOC or with the

NMHRD, they must exhaust their respective regimes' administrative remedies before seeking judicial review.  See Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir. 1996)("Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII."); Mitchell-Carr v. McLendon, 127 N.M. at 288, 980 P.2d at 71 ("[E]xhaustion of administrative remedies is a prerequisite to suit under the NMHRA, and a failure to exhaust administrative remedies may mean that the court lacks subject-matter jurisdiction.")(citing Luboyeski v. Hill, 117 N.M. 380, 382, 872 P.2d 353, 355 (1994)).  Exhaustion of administrative remedies is central to Title VII's statutory scheme, because it provides the EEOC and state deferral agencies with the first opportunity to investigate discriminatory practices, and enables them to perform their roles of obtaining voluntary compliance and of promoting conciliatory efforts.  See Patterson v. McLean Credit Union, 491 U.S. 164, 180-181 (1989); Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994).

    **1.**    **The Exhaustion of Administrative Remedies Under the NMHRA.**

The NMHRA makes it an unlawful discriminatory practice for

> an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition, or, if the employer has fifty or more employees, spousal affiliation; provided, however, that 29 U.S.C. Section 631(c)(1) and (2) shall apply to discrimination based on age; or, if the employer has fifteen or more employees, to discriminate against an employee based upon the employee's sexual orientation or gender identity. . . .

NMSA 1978, § 28-1-7.  The NMHRA also allows individuals to bring a lawsuit in the appropriate district court after exhausting their administrative remedies.  See Luboyeski v. Hill, 117 N.M. at 382, 872 P.2d at 355. The NMHRA provides:

A person aggrieved by an order of the commission may obtain a trial de novo in the

district court of the county where the discriminatory practice occurred or where the respondent does business by filing a notice of appeal within ninety days from the date of service of the commission's order.

NMSA 1978, § 28-1-13A.

To bring an NMHRA suit in district court, a plaintiff is required to exhaust the administrative grievance process with respect to all defendants named in the district court lawsuit. See Luboyeski v. Hill, 117 N.M. at 383, 872 P.2d at 356 ("Since [the plaintiff] has not gone through the administrative process that is prerequisite to suing the individual defendants under the Human Rights Act, we affirm the trial court's order dismissing those defendants."). Accordingly, in Luboyeski v. Hill, the Supreme Court of New Mexico affirmed a trial court's dismissal of respondents who were not named in the administrative proceeding, but who were added to the appeal to the district court. See 117 N.M. at 383, 872 P.2d at 356.

As this Court has previously acknowledged, the Supreme Court of New Mexico allows for personal liability under the NMHRA. See Duprey v. Twelfth Judicial Dist. Court, No. CIV 08-0756 JB, 2009 WL 2482170, at *7 (D.N.M. July 28, 2009)(Browning, J.). The NMHRA defines "employer" as "any person employing four or more persons and any person acting for an employer." NMSA 1978, § 28-1-2B. While acknowledging that there is generally no personal liability under Title VII, the Supreme Court of New Mexico has "reject[ed] the proposition that there can exist no individual liability under the NMHRA." Sonntag v. Shaw, 130 N.M. 238, 243, 22 P.3d 1188, 1193 (2001). In Sonntag v. Shaw, a defendant relied on Title VII case law to argue that the owner of a corporation could not be sued as an individual under the NMHRA. See Sonntag v. Shaw, 130 N.M. at 243, 22 P.3d at 1193. Although it held that the defendant could not be held personally liable, given that the plaintiff had failed to exhaust administrative remedies, the Supreme Court of New

Mexico declined to close the door on individual liability under the NMHRA.  See Sonntag v. Shaw,
130 N.M. at 243, 22 P.3d at 1193.  The Supreme Court of New Mexico noted in Sonntag v. Shaw:

> [T]his Court has acknowledged the possibility of individual liability for
> discrimination claims. Cf. Luboyeski v. Hill, 117 N.M. 380, 382, 872 P.2d 353, 355
> (1994) (affirming the dismissal of individual defendants because the plaintiff failed
> to exhaust administrative remedies against them); Mitchell-Carr v. McLendon,
> 1999-NMSC-025, ¶ 10, 127 N.M. 282, 980 P.2d 65 (citing Luboyeski). As Plaintiff
> suggests, the potential for individual liability for discrimination claims is rooted in
> the language of the NMHRA itself, which forbids "any person" from supporting a
> discriminatory practice. Section 28-1-7(I); see NMSA 1978, § 28-1-2(A) (1993)
> (including within its definition of "person" for purposes of the NMHRA, "one or
> more individuals").

Sonntag v. Shaw, 130 N.M. at 243, 22 P.3d at 1193.

### 2.      The Exhaustion of Administrative Remedies under Title VII

Title VII prohibits an employer from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any

individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's race, color, religion,

sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The ADEA  "prohibit[s] arbitrary age

discrimination in employment," 29 U.S.C. § 621, and makes it unlawful for an employer "to fail or

refuse to hire or to discharge any individual or otherwise discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's age," 29 U.S.C. § 623.  "Under long-standing [Tenth] [C]ircuit precedent, supervisors

and other employees may not be held personally liable under Title VII."  Williams v. W.D. Sports,

N.M., Inc., 497 F.3d 1079, 1083 n.9 (10th Cir. 2007).  See Haynes v. Williams, 88 F.3d 898, 899

(10th Cir. 1996)("The relief granted under Title VII is against the employer, not individual

employees whose actions would constitute a violation of the Act.").  Similarly, individual employees

are not liable under the ADEA.  See Butler v. City of Prairie Village, 172 F.3d 736, 744 (10th Cir.

1999).

### 3.    The 300-Day Filing Time Limit.

A plaintiff generally must exhaust his or her administrative remedies before pursuing a Title VII or ADEA claims in federal court.  See Khader v. Aspin, 1 F.3d 968, 970 (10th Cir. 1993). To exhaust administrative remedies, an individual claimant must: (i) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge; and (ii) receive notice of the right to sue.  See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999); 42 U.S.C. §§ 2000e-5(b), (c), (e), (f)(1).  To be timely, a plaintiff must file the charge with the EEOC within 180 days or with a state agency within 300 days of the complained-of conduct.  See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d at 1327; Gunnell v. Utah Valley St. Coll., 152 F.3d 1253, 1260 n.3 (10th Cir. 1998); 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.13 (1998).

After first timely filing a charge of discrimination with the EEOC setting forth the facts and nature of the charge, the plaintiff must next receive notice of the right to sue.  See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d at 1326; 42 U.S.C. § 2000e-5(b), (c), (e), (f)(1).  "[A] plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d at 1321.  Once an individual receives notice of the right to sue, he or she has ninety days in which to file suit. See 42 U.S.C. § 2000e-5(f)(1).

### 4.    The Exhaustion of Administrative Remedies Is a Jurisdictional Requirement.

Filing a charge of discrimination with the EEOC is a jurisdictional prerequisite to the

institution of a lawsuit based on a claim of employment discrimination under Title VII and the

Rehabilitation Act.  See  Alcivar v. Wynne, 268 F. App'x 749, 753 (10th Cir. 2008)("The Tenth

Circuit has consistently held that 'exhaustion . . . is a jurisdictional prerequisite to suit under Title

VII -- not merely a condition precedent to suit.'")(quoting Shikles v. Sprint/United Mgmt. Co., 426

F.3d 1304, 1317 (10th Cir. 2005)); Ransom v. U.S. Postal Service, 170 F. App'x 525, 527 & n.2

(10th Cir. 2006)("[A] claimant under the Rehabilitation Act . . . is required to present her claims to

the appropriate EEO agency before filing suit.")(citing 5 U.S.C. § 7702(a)(2); Wells v. Shalala, 228

F.3d 1137, 1142-43 (10th Cir. 2000)); Jones v. Runyon, 91 F.3d 1398, 1399 (10th Cir.

1996)("Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title

VII."); Romero v. Union Pac. R.R., 615 F.2d 1303, 1303 (10th Cir. 1980).  Without such a filing,

federal courts lack subject-matter jurisdiction to entertain discrimination claims under that statutes,

and a rule 12(b)(1) motion to dismiss is procedurally proper. See Seymore v. Shawyer & Sons, Inc.,

111 F.3d 794, 799 (10th Cir. 1997); Carmody v. SCI Colo. Funeral Servs., Inc., 76 F. Supp. 2d 1101,

1103-1104 (D. Colo.1999).[2]

---

[2] The Tenth Circuit has mentioned some concern whether failure to exhaust administrative remedies is still a jurisdictional prerequisite to suit after the Supreme Court's decision in Jones v. Bock, 549 U.S. 199 (2007).  See, e.g., Alcivar v. Wynne, 268 F. App'x at 753 (noting that "Jones v. Bock held that under the PLRA [Prison Litigation Reform Act] exhaustion is an affirmative defense to be raised by the defendant and not a jurisdictional pleading requirement," but finding it was "not . . . necessary to decide whether exhaustion is jurisdictional under Title VII after Jones."); McQueen v. Colo. Springs Sch. Dist. No. 11, 488 F.3d 868, 874 (10th Cir. 2007)("Although courts have repeatedly referred to the exhaustion requirement as *jurisdictional*, . . . recent Supreme Court jurisprudence in other contexts casts doubt on that characterization . . . .")(citations omitted, emphasis in original).  Neither party in this case argues that administrative exhaustion is not still a jurisdictional prerequisite.  Moreover, a recent unpublished Tenth Circuit decision indicates that Jones v. Bock did not demote the exhaustion requirement from a jurisdictional prerequisite to an affirmative defense, at least in the Title VII context.  See Martinez v. Target Corp., No. 09-2112, 2010 WL 2616651, at *3 n.2 (10th Cir. July 1, 2010)(slip op.)(Kelly, Porfilio, O'Brien, JJ.)("Martinez is not proceeding under the PLRA; Bock is inapposite.  She does not point us to a

i.        **Each Discrete Incident Must be Exhausted.**

Before 2002, under the "continuing violation" theory, the Tenth Circuit recognized a limited exception to the "exhaustion rule for Title VII claims when the unexhausted claim is for discrimination like or reasonably related to the allegations of the EEOC charge."   Simms v. Oklahoma ex. rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d at 1327 (internal citations and quotations omitted).  The Tenth Circuit "construed the 'reasonably related' exception to include most retaliatory acts subsequent to an EEOC filing." 165 F.3d at 1327 (citing Seymore v. Shawyer & Sons, Inc., 111 F.3d at 799).  In Martinez v. Potter, 347 F.3d 1208 (2003), however, the Tenth Circuit noted that the "Supreme Court's recent pronouncement in National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), has effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions." 347 F.3d at 1210.  The Tenth Circuit's "decisions have unambiguously recognized Morgan as rejecting application of the 'continuing violation' theory."   Martinez v. Potter, 347 F.3d at 1211 (citing Davidson v. America Online, Inc., 337 F.3d 1179 (10th Cir.2003)).  The Tenth Circuit stated:

> We agree with the government that such unexhausted claims involving discrete employment actions are no longer viable.  Morgan abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own unlawful employment practice for which administrative remedies must be exhausted.

347 F.3d at 1210 (internal citations and quotations omitted).[3]

single decision -- of this or any other court -- applying Bock in the context of a Title VII or ADEA case.").

[3] In the Court's MOO, it stated: "When an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge."  MOO at 8

Thus, under National Railroad Passenger Corp. v. Morgan, each discrete act of discrimination must be administratively exhausted.  "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 114 (internal citations and quotations omitted).  In National Railroad Passenger Corp. v. Morgan, this rule applied to bar a plaintiff from suing on claims for which no administrative remedy had been sought when those incidents complained of occurred more than 300 days before the filing of Plaintiff's EEO complaint.  See Martinez v. Potter, 347 F.3d at 1210.  "The rule is equally applicable, however, to discrete

_____

(Martinez v. Potter, 347 F.3d 1208, 1210 (10th Cir. 2003)).  This statement of law reflects the old law under the continuing-violation theory, and has been abrogated by National Railroad Passenger Corp. v. Morgan, and Martinez v. Potter.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 109 ("Title 42 U.S.C. § 2000e-5(e)(1) is a charge filing provision that 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit.  An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made.").  In Martinez v. Potter, the Tenth Circuit stated:

> The district court held that [the plaintiff's allegations] could not proceed because they were not like or reasonably related to the allegations in Mr. Martinez's EEO complaint, and Mr. Martinez had failed to exhaust administrative remedies. . . . [T]he district court relied on our holdings . . . Those cases explain that "[w]hen an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC."  Although we agree with the district court that these claims were not properly before it, the Supreme Court's recent pronouncement in National Railroad Passenger Corp. v. Morgan has effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions. . . .  Morgan abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted.

Martinez v. Potter, 347 F.3d at 1210 (citations omitted).

claims based on incidents occurring after the filing of Plaintiff's EEO complaint." Id. at 1210-11. The Tenth Circuit has stated: "Our decisions have unambiguously recognized Morgan as rejecting application of the continuing violation theory." Martinez v. Potter, 347 F.3d at 1211 (internal quotations omitted). Failing to exhaust administrative remedies does not "bar an employee from using the prior acts as background evidence in support of a timely claim." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 113.

<strong>ii.      At Least One Related Act that Is the Basis of a Hostile Environment Claim Must Be Exhausted.</strong>

A different rule applies to hostile environment claims.  Under National Railroad Passenger Corp. v. Morgan, a series of events that constitute a hostile environment claim are considered one unlawful action.  See West v. Norton, 376 F. Supp. 2d 1105, 1129 (D.N.M. 2004)(Browning, J.). "Hostile environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 115 (internal citations and quotations omitted).   An "unlawful employment practice" that constitutes a hostile work environment thus cannot be said to occur on any particular day, but rather occurs over a series of days or years. Id. (citing Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).  Thus, so long as one of the incidents included within the claim of hostile environment occurred within the 300-day time limit provided for under 42 U.S.C. § 2000e-5(e)(1), other conduct that occurred outside of the proscribed time period, but contributing to the hostile work  environment, is not time barred.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 115 (holding "that consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period"); West v. Norton, 376 F. Supp. 2d

-20-

at 1129.  "[A] series of alleged events comprises the same hostile environment where 'the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'"  Duncan v. Manager, Dep't of Safety, City & Co. of Denver, 397 F.3d at 1309 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 120).

### 5.    Time Requirements for Exhausting Administrative Remedies Are Not Jurisdictional.

While failure to exhaust administrative remedies is a jurisdictional bar to suit, in Zipes v. Trans World Airlines, Inc., 455 U.S. 385 (1982), the Supreme Court of the United States held that "filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."  455 U.S. at 393.  See DeWalt v. Meredith Corp., 288 F. App'x 484, 490 (10th Cir. 2008)(citing Zipes v. Trans World Airlines, Inc., 455 U.S. at 393; Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1174-75 (10th Cir.1998)).  The Tenth Circuit treats a plaintiff's failure to timely exhaust administrative remedies not "as a jurisdictional issue, [but] rather . . . as an affirmative defense to be raised by [defendants]."  DeWalt v. Meredith Corp., 288 F. App'x at 490.  When a defendant brings a motion to dismiss for lack of subject-matter jurisdiction under rule 12(b)(1) based on a plaintiff's failure to exhaust administrative remedies in a timely manner, a court "analyze[s] th[e] case under 12(b)(6) of the Federal Rules of Civil Procedure," unless a court considers materials outside the complaint, in which case "it should . . . treat[] [the] motion as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure."  Douglas v. Norton, 167 F. App'x 698, 704-05 (10th Cir. 2006).

Though not jurisdictional, the forty-five day limitation period is not an arbitrary barrier.  It

is designed to give an agency timely notice of potentially illegal conduct, to discover and correct its own errors and possibly conciliate the claim.  See Sampson v. Civiletti, 632 F.2d at 863.  An employee who fails to comply with the limitation period is barred from seeking judicial relief in federal court, absent a defense of equitable tolling.  See Davis v. United States Postal Serv., 142 F.3d at 1339; Wilson v. West, 962 F. Supp. 939, 944 (1997).

### i.      Exceptions of Equitable Tolling Are Narrowly Construed.

"Equitable exceptions, however, have been narrowly construed."  Harms v. I.R.S., 321 F.3d 1001, 1006 (10th Cir. 2003).  See Montoya v. Chao, 296 F.3d 952, 957 (10th Cir. 2002)(stating that "federal courts have typically extended equitable relief only sparingly.").  The Tenth Circuit "has generally recognized equitable tolling of Title VII periods of limitation only if circumstances rise to the level of active deception which might invoke the powers of equity to toll the limitations period."  Montoya v. Chao, 296 F.3d at 957.  See Godwin v. Sw. Research Inst., 237 F. App'x 306, 307 (10th Cir. 2007)("Our precedent requires that an ADEA plaintiff demonstrate 'active deception' on the part of an employer, the EEOC, or the court."); Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1269 n.2 (10th Cir. 1996)(noting in a Title VII case that "extraordinary circumstances" are "necessary to justify equitable tolling under established Tenth Circuit precedent.").  "Equitable tolling may be appropriate where a plaintiff has been lulled into inaction by an employer's 'deliberate design . . . or actions that the employer should unmistakably have understood would cause the employee to delay filing his charge.'"  Al-Ali v. Salt Lake Cmty. Coll., 269 F. App'x 842, 847 (10th Cir. 2008)(quoting Hulsey v. Kmart, Inc., 43 F.3d 555, 557 (10th Cir. 1994)).  Equitable tolling "is not warranted where an employee is aware of all of the facts constituting discriminatory treatment but lacks direct knowledge of the employer's subjective discriminatory purpose."  Bennett

-22-

v. Coors Brewing Co., 189 F.3d 1221, 1235 (10th Cir. 1999)(citation omitted).

ii.     **Equitable Tolling Is Within the District Court's Discretion.**

The decision whether to equitably toll the limitations period rests within the district court's sound discretion.  See Purrington v. Univ. of Utah, 996 F.2d 1025, 1030 (10th Cir. 1993).  In Castaldo v. Denver Public Schools, 276 F. App'x 839 (10th Cir. 2008), the Tenth Circuit found that the district court did not abuse its discretion when it chose not to apply equitable tolling to the plaintiff's EEOC charge when the plaintiff alleged: (i) that his employer did not post notices regarding the filing of EEOC charges; (ii) that he was too incapacitated by his shoulder injuries to file an EEOC charge; and (iii) he was proceeding pro se.  See 276 F. App'x at 841.  The Tenth Circuit found no error in the district court's conclusion that the failure to post EEOC notices was not a sufficient justification for equitable tolling.  See 276 F. App'x at 841.  See also Wilkerson v. Siegfried Ins. Agency, Inc., 683 F.2d 344, 347 (10th Cir. 1982)(holding that "the simple failure to post . . . notices, without intent to actively mislead the plaintiff respecting the cause of action, does not extend the time within which a claimant must file his or her discrimination charge").  The district court noted that the plaintiff did not allege that his employer intended to actively deceive him by failing to post notices about filing EEOC charges.  See Castaldo v. Denver Pub. Schs., 276 F. App'x at 841.  The Tenth Circuit also concluded that the statements in the plaintiff's EEOC charge revealed that it was not his alleged incapacity that prevented him from filing a timely charge, but rather the fact that he was unaware of his obligation to do so until he consulted an attorney.  See 276 F. App'x at 841.  The Tenth Circuit found that "his ignorance of the filing requirement does not entitle him to equitable tolling."  276 F. App'x at 842.  Finally, the Tenth Circuit upheld the district court's finding that the plaintiff's pro-se status did not justify equitable tolling, because the plaintiff had the

ability to contact an attorney but elected not to do so until well after the expiration of the filing period.  See 276 F. App'x at 842.

In Godwin v. Southwest Research Institute, the Tenth Circuit held that the district court did not abuse its discretion in refusing to employ equitable tolling when the plaintiff misaddressed his EEOC submission, which arrived forty-four days after the time limit had expired.  See 237 F. App'x. at 307-08.  In Baker v. Perfection Hy-Test, No. 95-6091, 1996 WL 1162 (10th Cir. Jan. 2, 1996), the Tenth Circuit held that there was no active deception sufficient to toll the 300-day deadline where the plant manager of the plaintiff's employer told the plaintiff, after his demotion, that "restructuring was happening 'all over the country,' that plaintiff 'couldn't sue,' [and] that he might try but he 'wouldn't get to first base.'" 1996 WL 1162, at * 2.  The Tenth Circuit found that the statements "at most expressed an opinion concerning plaintiff's likelihood of success."  Id. at *7.

## ANALYSIS

The Court finds that Bates failed to exhaust her administrative remedies against the individual Defendants and for the events at the defensive tactics course.  To the extent Bates did not exhaust her administrative remedies, the Court lacks subject-matter jurisdiction over her Title VII and NMHRA claims.  The Court will also dismiss her claims for punitive damages under the NMHRA.  Finally, the Court will dismiss the punitive damages claims under Title VII against the state.

## I.     THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER THE TITLE VII AND NMHRA CLAIMS WHERE BATES FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES.

The Court lacks subject-matter jurisdiction over Bates' claims against the individual Defendants and her claims based on the events at the defensive tactics training course, because Bates

-24-

failed to exhaust her administrative remedies for these matters.  Consequently, the Court dismisses these claims for lack of subject-matter jurisdiction.

The Defendants argue Bates has not exhausted her administrative remedies against any of the named individual Defendants, because her Charge names only NMCD as a respondent.  <u>See</u> Memorandum at 5 (citing Charge).  The individual Defendants argue that, because Bates seeks damages under Title VII and the NMHRA against them in their individual capacities, she was required to name them as respondents during the proceedings in which she exhausted her administrative remedies.  <u>See</u> Memorandum at 5 (citing <u>Kane v. Christian Brothers of the College of Santa Fe Community</u>, 2006 WL 4079684, at *9).  The Defendants further argue that Bates may not add individuals, who were not parties to an administrative proceeding, on appellate review of that proceeding.  <u>See</u> Memorandum at 5.  Thus, the Defendants argue, because no Defendant other than NMCD was named as a respondent on Bates' Charge, her Title VII and NMHRA claims against Gonzales, Bouska, Knipfing, D. Barela, and J. Barela must be dismissed for lack of subject-matter jurisdiction.  <u>See</u> Motion at 5.

The Defendants also argue that Bates' Charge did not, and could not include her claims pertaining to the defensive tactics course.  <u>See</u> Memorandum at 5.  The Defendants note that Bates had 300 days to file her charge with the NMHRD.  <u>See</u> Memorandum at 5-6.  They assert that Bates has not filed an EEOC charge with respect to her claims of sexual harassment and discrimination predicated upon her alleged treatment in the defensive tactics course.  <u>See</u> Memorandum at 6.  The Defendants also note that the course took place in late March of 2006, and Bates did not file her Charge until November 5, 2007, "long past the 300-day deadline for filing a charge based upon that alleged treatment."  Memorandum at 6.  Based on this problem, the Defendants argue that, as a

matter of law, Bates' Charge cannot be construed to include her untimely allegations regarding the defensive tactics course, and that the Court should dismiss her allegations regarding the defensive tactics course and D. Barela and J. Barela in paragraphs 6-7, 14-24, and 50-60 of the First Amended Complaint for lack of subject-matter jurisdiction.  See Memorandum at 6.

Bates responds that she fully exhausted her administrative remedies, and that the Court has subject-matter jurisdiction over her Title VII and NMHRA claims.  She argues that EEOC Form 5 (5/01)("Form"), the form Bates used to file her Charge, does not require complaining parties to name individuals.  She asserts that "the Form provides the option to name the employer 'or' the individuals."  Response at 5.  She argues that she identified NMCD, and stated that she believed she was being discriminated against because of her gender and age.  Bates further asserts that, "[e]ssentially, Plaintiff's Complaint is based on hostile work environment claims and the discrete act [of] NMCD's failure to promote, all of which are identified in Plaintiff's Charge of Discrimination."  Response at 5.

Bates notes that discrete acts of discrimination are treated differently than hostile work environment claims because "a series of events that constitute a hostile environment claim are considered one unlawful action."  Response at 6 (quoting King v. Kempthorne, Nos. CIV 05-0575 JB/WDS, CIV 05-0997 JB/WDS, 2008 WL 410413, at *9 (D.N.M. Mar. 31, 2008)(Browning, J.)). Thus, Bates argues, "so long as one of the incidents included within the claim of hostile environment occurred within the proscribed time period, other conduct that occurred outside of the proscribed time period but contributing to the hostile work environment, is not time barred."  Response at 6 (quoting King v. Kempthorne, 2008 WL 410413, at *9).  Based on this principle, Bates argues that the alleged harassment she "suffered during the defensive tactics course was part of a larger and

-26-

continuing hostile work environment which existed throughout the entire Firearms Training and Procedures Course and beyond." Response at 6. She further asserts that, because she filed her EEOC Charge "concerning the second week of the course within the statutory time period, the conduct in the defensive tactics course, which contributed to the hostile work environment, should not be time barred." Response at 6.

The Court agrees that Bates failed to exhaust her administrative remedies as to some of her claims. Consequently, the Court finds it lacks subject-matter jurisdiction over those claims, and will dismiss the Title VII and NMHRA claims against the individual Defendants and her claims predicated on the events at the defensive tactics training course because they were not administratively exhausted.

### A.    THE COURT WILL DISMISS THE TITLE VII AND NMHRA CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS.

Bates has not exhausted her administrative remedies against any of the named individual defendants, because her Charge names only the NMCD as a respondent. Because Bates named no Defendant other than the NMCD as a respondent on Bates' Charge, and because individuals are not subject to liability under Title VII, the Court will dismiss her Title VII and NMHRA claims against Gonzales, Bouska, Knipfing, D. Barela, and J. Barela for lack of subject-matter jurisdiction.

Bates seeks damages against the individual Defendants in their official and personal capacity under Title VII and the NMHRA. See Amended Complaint at 1. Compliance with the administrative grievance procedure is a prerequisite to a suit under Title VII and the NMHRA. For a plaintiff to pursue a Title VII or NMHRA claim against a defendant in court, therefore, the plaintiff must have exhausted his or her administrative remedies with the NMHRD or EEOC. See Kelley v. City of Albuquerque, 375 F. Supp. 2d 1183, 1214 (D.N.M. 2004)(Browning, J.)("Before a plaintiff

can state a valid claim against an individual defendant under NMHRA, however, the plaintiff must first exhaust her administrative remedies."). In Sonntag v. Shaw, the Supreme Court of New Mexico stated that, "[u]nder the NMHRA, a plaintiff must exhaust his or her administrative remedies against a party before bringing an action in district court against that party . . . ." Sonntag v. Shaw, 130 N.M. at 243, 22 P.3d at 1193. Based on this requirement, the Supreme Court of New Mexico held that, "[i]n neglecting to name [the corporation's owner] personally, [the plaintiff] failed to exhaust her administrative remedies against him. The trial court [had] therefore erred in allowing Plaintiff's discrimination claim to be brought against [the owner] individually." Id. at 243, 22 P.3d at 1193. Similarly, in Luboyeski v. Hill, the Supreme Court of New Mexico addressed a case where the plaintiff "filed a complaint with the Division, naming the School System as respondent and claiming that Kermit Hill, another teacher at the school where [the plaintiff] taught, had touched and made advances toward her in sexually inappropriate ways." Luboyeski v. Hill, at 117 N.M. at 381, 872 P.2d at 354. Hill was "not named as [a] respondent[] in the proceeding before the Division and w[as] only added as defendants on [the plaintiff's] appeal to the district court." Id. at 382, 872 P.2d at 355. The Court found that the plaintiff had not exhausted her administrative remedies against Hill, holding "that parties who have not been parties to an administrative proceeding should not be added on appellate review of that proceeding." Id. at 382, 872 P.2d at 355 (internal citations and quotations omitted).

Bates' Charge named the NMCD, but not Gonzales, Bouska, Knipfing, D. Barela, and J. Barela. She does not dispute that she did not name the individual Defendants in her Charge. As such, the EEOC never included the individual Defendants in its administrative assessments. Because Bates did not exhaust her administrative remedies with respect to the individual

Defendants, the Court will dismiss the claims against them.

Bates also cannot maintain a discrimination suit under Title VII against the individual Defendants in their personal capacities.  The Tenth Circuit has held: "Under Title VII, suits against individuals must proceed in their official capacity; individual capacity suits are inappropriate.  The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act."  Haynes v. Williams, 88 F.3d 898, 899 (10th Cir. 1996)(quoting Sauers v. Salt Lake County, 1 F.3d 1122, 1125 (10th Cir. 1993)).  See Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir. 1991)("The relief granted under Title VII is against the employer, not individual employees whose actions would constitute a violation of the Act.").  At the hearing, Bates conceded that she cannot sue individuals under Title VII.  See Transcript of Hearing at 6:4-6 (taken September 15, 2010)(Court, Reimer)("Tr.").[4] Consequently, the Court will dismiss the federal sex-discrimination claims against the individual Defendants with prejudice.

### B. THE COURT WILL DISMISS BATES' TITLE VII AND NMHRA CLAIMS BASED ON THE DEFENSIVE TACTICS COURSE.

Bates filed her Charge long past the 300-day deadline for filing a charge based upon that alleged treatment.  Bates' Charge did not -- and could not have -- included her claims pertaining to the defensive tactics course.  Bates has not filed an EEOC charge with respect to her claims of sexual harassment and discrimination predicated upon her alleged treatment in the defensive tactics course.  As a matter of law, Bates' Charge cannot be construed to include her untimely allegations regarding the defensive tactics course.  Consequently, the Court will dismiss for lack of subject-matter jurisdiction any of Bates Title VII and the NMHRA claims based on the allegations regarding

---

[4] The Court's citations to the transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

the defensive tactics course and/or the individual Defendants.[5]

"In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 109.  Bates does not dispute that she did not reference the events in the defensive tactics course in her EEOC Charge, or that the events occurred more than 300 days prior to filing her Charge.[6]

Bates brings a hostile work environment claim under Title VII.  See Amended Compliant at 7-8 ("Defendants have intentionally discriminated against Plaintiff by, among other things . . . [m]aintaining a work environment that was hostile to Plaintiff because of her gender, which environment was severe or pervasive enough to alter her terms and conditions of

---

[5] Bates also makes the argument that she "pursued grievances at every level to the extent that NMCD would allow.  However, NMCD ultimately took the position that the grievance procedure must be stayed.  Thus, Plaintiff has exhausted her administrative remedies with regard to her claims, including those that arose from the defense tactics course."  Response at 6-7.  Regarding Bates' contention that pursuing her union's grievance procedure exhausted her administrative remedies, the Defendants correctly argue that "[n]either Title VII, the NMHRA, nor the cases construing those statutes provide that filing a union grievance constitutes exhaustion of an employee's administrative remedies."  Reply at 6.  The Court agrees that Bates' reliance on her union's grievance has no basis in law.  Furthermore, as the Defendants note, her union's grievances also fail to mention the defensive tactics course, so invoking the union's grievances would do her no good, even if her argument had a basis in the law.  See Smith v. EEOC, 180 F. App'x 14, 20 (10th Cir. 2006)(rejecting plaintiff's argument that initiating a union grievance within filing period satisfied the policies underlying exhaustion, particularly when the grievance did not include the unexhausted allegations).

[6] On the EEOC Form, under "date(s) discrimination took place," Bates entered "earliest 05-01-2007"7 " and "latest 10-11-2007," and she checked the box indicating that she complained of a continuing action.  The defensive tactics course occurred in late March of 2006.  At the hearing, Bates conceded that the defensive training course would not be exhausted as a discrete act.  See Tr. 4:22-5:14 (Court, Reimer).

employment."). Bates is not wrong to argue that "so long as one of the incidents included within the claim of hostile environment occurred within the proscribed time period, other conduct that occurred outside of the proscribed time period but contributing to the hostile work environment, is not time barred." Response at 6. However, she would have the Court construe "hostile work environment" too broadly. In National Railroad Passenger Corp. v. Morgan, the Supreme Court of the United States provided three factors courts consider to determine "if a series of separate acts . . . collectively constitute one 'unlawful employment practice.'" 536 U.S. at 120 (quoting 42 U.S.C. § 2000e-5(e)(1)). "[A] series of alleged events comprises the same hostile environment where 'the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.'" Duncan v. Manager, Dep't of Safety, City & Co. of Denver, 397 F.3d at 1309 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 120).

In National Railroad Passenger Corp. v. Morgan, the Court addressed whether an EEOC charge alleging the plaintiff was "consistently harassed and disciplined more harshly than other employees on account of his race" was part of the same hostile work environment claim as "evidence from a number of other employees that managers made racial jokes, performed racially derogatory acts, made negative comments regarding the capacity of blacks to be supervisors, and used various racial epithets." 536 U.S. at 120. While expressly declining to make a judgment on the merits of the plaintiff's claims, the Court found it could not say that these were "not part of the same actionable hostile environment claim" Id. at 121.

In Duncan v. Manager, Dep't of Safety, City & Co. of Denver, the Tenth Circuit addressed a plaintiff's hostile environment claim alleging "three groups of acts that plausibly took place during

the filing period: (1) the harassing statements by Sgt. Andrews; (2) the spreading of rumors by

Litigant. Leone; and (3) the anonymous magazine article placed in her box and the theft of a

notebook by an unknown perpetrator." 397 F.3d at 1309.  The Tenth Circuit "examin[ed] the acts

in the filing period and determin[ed] what acts outside of the filing period [we]re related by type,

frequency, and perpetrator.   The entire range of related acts constitute[d] the hostile work

environment underlying Ms. Duncan's claim."   Id.   The Tenth Circuit found:

> The alleged actions of Sgt. Andrews and Litigant. Leone began after Ms. Duncan
> returned to District Four in late 1996 and continued into the filing period. These acts
> are related by type, frequency, and perpetrator, thus all these acts, including those
> before the beginning of the filing period, are within the scope of Ms. Duncan's
> hostile work environment claim.  The alleged hostile actions that occurred before
> Ms. Duncan returned to District Four, however, are not part of the same hostile work
> environment as those alleged during the filing period. The acts she alleges
> immediately prior to her return are an anonymous letter threatening physical violence
> and Chief Michaud's adjustment of her score on the sergeant's exam. While these acts
> may have a temporal relation to the behavior of Sgt. Andrews and Litigant. Leone,
> they are of a different character, they took place while Ms. Duncan was on a different
> assignment, and they were not perpetrated by the same people. Even if we draw all
> inferences in Ms. Duncan's favor, we do not think a rational jury could conclude that
> any of the allegations before her return to District Four are part of the same hostile
> work environment as those acts alleged during the filing period.

Id.

Bates' allegations regarding the defensive tactics course fail all three prongs of the test

established in National Railroad Passenger Corp. v. Morgan.  The alleged events at the course were

not of the same nature as those she complained of in her Charge, they did not recur frequently, and

they were perpetrated by different parties.  With respect to the first prong, the only employment

actions alleged in Bates' EEOC Charge are her inability to obtain her firearms qualification and her

alleged denial of a promotion based upon her lack of firearms qualification.  These actions are

different than being "put down, harassed, beaten, injured, and humiliated" by having her pants

pulled down while she was beaten with rubberized batons and having a man who outweighed her by 100-pounds lie atop her to restrain her.  Amended Compliant ¶¶ 20, 23, 24, at 4, 5.  For the second prong, Bates does not allege that such physical sexual discrimination is frequent.  From her Amended Complaint, the physical sexual discrimination appears to be limited to the defensive tactics course.  Finally, on the third prong, D. Barela and J. Barela supervised the defensive tactics course.  See Amended Complaint ¶ 16, at 3; Answer ¶ 16, at 3.  Bates does not contend that they were involved in any of the events at the firing range or in denying her a promotion, the events mentioned in her Charge.  Consequently, the alleged events at the defensive tactics course do not "collectively constitute one 'unlawful employment practice'" with the events listed in Bates' Charge.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 120.

## II.    THE NMHRA DOES NOT AUTHORIZE PUNITIVE DAMAGES.

The Court dismisses Bates' claims for Punitive damages under the NMHRA because the statute does not authorize them.

The Defendants argue that the NMHRA does not provide for an award of punitive damages, and that the Supreme Court of New Mexico has "held unambiguously that punitive damages may not be recovered under the NMHRA."  Memorandum at 7 (citing Gandy v. Wal-Mart Stores, Inc., 117 N.M. 441, 443, 872 P.2d 859, 861 (1994); Nava v. City of Santa Fe, 136 N.M. 647, 652, 103 P.3d 571, 576 (2004)(noting that a remittitur is appropriate in NMHRA cases if the jury verdict was intended to punish the Defendant)).  In her Response, Bates "acknowledges that punitive damages are not actionable under the NMHRA." Response at 7.

The Court agrees that punitive damages are not available under section 28-1-13D of the NMHRA.  Section 28-1-13D provides the procedures by which "[a] person aggrieved by an order

of the commission may obtain a trial de novo in the district court of the county where the discriminatory practice occurred or where the respondent does business."  N.M.S.A. § 28-1-13A. It states that, "if the complainant prevails, the court in its discretion may allow actual damages and reasonable attorney fees and the state shall be liable the same as a private person."  N.M.S.A. § 28-1-13D.   Based on this language, the Supreme Court of New Mexico stated that "[p]unitive damages . . . are not recoverable under the Human Rights Act."  Gandy v. Wal-Mart Stores, Inc., 117 N.M. at 443, 872 P.2d at 861 (citing N.M.S.A. §§ 28-1-11(E), 28-1-13(D); Behrmann v. Phototron Corp., 110 N.M. 323, 328, 795 P.2d 1015, 1020 (1990)).  While interpreting "actual damages" under § 28-1-13, the Supreme Court of New Mexico noted that "actual damages is synonymous with compensatory damages and . . . compensatory damages are exclusive of punitive damages."  Behrmann v. Phototron Corp., 110 N.M. at 328, 795 P.2d at 1020.  Consequently, the Court dismisses Bates' claims for punitive damages under the NMHRA.

**III.    TITLE VII DOES NOT AUTHORIZE PUNITIVE DAMAGES IN CLAIMS AGAINST THE STATE.**

The Court dismisses Bates' claims for punitive damages under Title VII, because the statute does not allow punitive damages in claims against the state.

The Defendants argue that Title VII does not permit Bates to seek punitive damages against the NMDC.  They assert that, although Bates brings her Title VII claims against all the Defendants, the individual Defendants may not be held liable under that statute.  See Memorandum at 7-8 (citing Haynes v. Williams, 88 F.3d at 901 ("[P]ersonal capacity suits against individual supervisors are inappropriate under Title VII.")).  The Defendants argue that only the NMCD may be a proper Defendant in these claims, and punitive damages are not permitted in suits against a government, government agency, or political subdivision under 42 U.S.C. § 1981a.  See Memorandum at 8.

-34-

Bates "acknowledges that punitive damages are not actionable against a government, government agency or political subdivision under Title VII." Response at 7.

The Court agrees that it should dismiss Bates' claims under Title VII for punitive damages. Title VII does not support personal liability suits against individuals. The Tenth Circuit "has repeatedly held 'that personal capacity suits against individual supervisors are inappropriate under Title VII,' which is directed, rather, to the plaintiff's employer." Lewis v. Four B Corp., 211 F. App'x 663, 664-65 (10th Cir. 2005)(citing Haynes v. Williams, 88 F.3d at 899). The Court, furthermore, dismisses the claims against the individual Defendants in this Memorandum Opinion and Order. Moreover, punitive damages are not permitted in Title VII claims against the state. Section 1981a of Title 42 sets forth the damages available in an action under Title VII against a defendant who engaged in unlawful intentional discrimination prohibited under 42 U.S.C. §§ 2000e-2, 2000e-3, or 2000e-16, which cover discrimination based on sex and include claims for hostile work environment and sexual harassment. See Chavez v. New Mexico, 397 F.3d 826, 831-33 (10th Cir. 2005). A plaintiff may not, however, recover punitive damages from "a government, government agency or political subdivision." 42 § 1981a(b)(1). Consequently, the Court dismisses Bates' claims for punitive damages under Title VII.

**IT IS ORDERED** that the Defendants' Motion for Partial Dismissal of First Amended Complaint is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

R. Galen Reimer
Christopher J. Supik
Guebert, Bruckner & Bootes, P.C.
Albuquerque, New Mexico

>    *Attorneys for the Plaintiff*

M. Karen Kilgore
Cuddy & McCarthy, LLP
Santa Fe, New Mexico

>    *Attorney for the Defendants*